## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

FLORENCIO A. GHINAGLIA SOCORRO,

      Plaintiff,

v.

MASSACHUSETTS MUTUAL LIFE
INSURANCE COMPANY,
C.M. LIFE INSURANCE COMPANY, and
HAVEN LIFE INSURANCE AGENCY, LLC,

      Defendants.

MAY 9 2022 AM 9:47
FILED-USDC-CT-HARTFORD

Civil No. 3:22-cv-0639-CSH

May 9, 2022

## COMPLAINT

The plaintiff Florencio A. Ghinaglia Socorro files this complaint against defendants Massachusetts Mutual Life Insurance Company, C.M. Life Insurance Company, and Haven Life Insurance Agency, LLC, for unlawful alienage discrimination under 42 U.S.C. § 1981 in their denial of the plaintiff's application for individual term life insurance.

## PARTIES

1.     Plaintiff Florencio A. Ghinaglia Socorro is a resident of Connecticut who resides at 64 Perkins Street, New Haven, Connecticut 06513.

2.     Upon information and belief, defendant Massachusetts Mutual Life Insurance Company ("MassMutual") is a Massachusetts mutual life insurance company with a principal place of business located at 1295 State Street, Springfield, Massachusetts 01111. Upon information and belief, MassMutual regularly does or solicits business in the State of Connecticut. MassMutual is registered as a licensed insurance company with the Connecticut Insurance Department and holds Certificate of Authority number 4530.

3.      Upon information and belief, defendant C.M. Life Insurance Company ("C.M. Life") is a Connecticut stock life insurance company with a principal place of business located at 100 Bright Meadow Boulevard, Enfield, Connecticut 06082. Upon information and belief, C.M. Life is a wholly owned subsidiary of defendant MassMutual. Upon information and belief, C.M. Life regularly does or solicits business in the State of Connecticut. C.M. Life is registered as a licensed insurance company with the Connecticut Insurance Department and holds Certificate of Authority number 1247.

4.      Upon information and belief, defendant Haven Life Insurance Agency, LLC ("Haven Life") is a Delaware limited liability company with a principal place of business located at 60 Madison Ave, 7th Floor, New York, NY 10010. Upon information and belief, Haven Life is a wholly owned subsidiary of defendant MassMutual. Upon information and belief, Haven Life regularly does or solicits business in the State of Connecticut. Haven Life is registered as a foreign limited liability company with the Connecticut Secretary of State. Haven Life is also licensed as an insurance producer with the Connecticut Insurance Department and holds license number 2505996. Haven Life holds appointments from MassMutual and C.M. Life that are registered with the Connecticut Insurance Department. Haven Life acts as an agent of MassMutual and C.M. Life, and it sells, solicits, and negotiates life insurance in Connecticut.

## JURISDICTION AND VENUE

5.      The Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(4).

6.      The Court has personal jurisdiction over MassMutual pursuant to Conn. Gen. Stat. § 52-59b by virtue of MassMutual transacting, doing, and soliciting business in this District, and committing acts in violation of the plaintiff's civil rights in this District.

7.      The Court has personal jurisdiction over C.M. Life because C.M. Life is resident in and a citizen of the State of Connecticut, because it transacts, does, and solicits business in this District, and because it committed acts in violation of the plaintiff's civil rights in this District.

8.      The Court has personal jurisdiction over Haven Life pursuant to Conn. Gen. Stat. § 52-59b by virtue of Haven Life transacting, doing, and soliciting business in this District, and committing acts in violation of the plaintiff's civil rights in this District.

9.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the plaintiff's claims occurred in this District.

## **FACTS**

10.     Defendants MassMutual, C.M. Life, and Haven Life intentionally discriminate against noncitizen applicants for individual term life insurance in the United States on the basis of alienage by way of facially discriminatory policies and/or practices that categorically reject applications from certain noncitizens present in the United States who otherwise qualify for their term life insurance policies.

11.     The plaintiff is a Venezuelan national who currently resides in the State of Connecticut and has resided in the State of Connecticut since 2010. The plaintiff has resided continuously in the United States since April 1994.

12.     On December 17, 2020, the plaintiff was lawfully admitted to permanent residence on a conditional basis under INA § 216, 8 U.S.C. § 1186a, as the spouse of a citizen of the United States.

13.     Individuals admitted as permanent residents on a conditional basis receive a Form I-551 ("green card") valid for two years, while individuals admitted as permanent residents under other categories receive green cards valid for ten years.

14.     As required by the Immigration and Nationality Act, the plaintiff intends to file his Petition to Remove Conditions on Residence (I-751) on the earliest date lawfully possible for him—September 17, 2022—and no later than December 17, 2022. *See* 8 U.S.C. § 1186a.

15.     As of May 8, 2022, U.S. Citizenship and Immigration Services takes between 10 and 31 months to process eighty percent of Petitions to Remove Conditions on Residence once the petitions are received, depending on the field office or service center assigned to process the petition. *See* U.S. Citizenship and Immigration Services, Check Case Processing Times, https://egov.uscis.gov/processing-times/ (last visited May 8, 2022).

16.     For the current fiscal year, the median processing time across field offices and service centers for this petition is currently 17.6 months. *See* U.S. Citizenship and Immigration Services, Historical National Median Processing Time, https://egov.uscis.gov/processing-times/historic-pt (last visited May 8, 2022).

17.     Accordingly, the plaintiff does not know when he will receive a green card valid for ten years, but he expects that he may receive a green card valid for ten years between July 2023 and April 2025.

18.     In mid-March 2022, the plaintiff was informed that a younger acquaintance whom he had greatly admired had died unexpectedly and that he was survived by his spouse, parents, and children.

19.     The plaintiff began to explore options for individual term life insurance in order to take care of his own spouse and parents, and potentially future children, in the event of the plaintiff's death. Among the companies he encountered online was Haven Life.

20.     Haven Life advertises itself as "Life insurance that's actually simple" and "An easy, affordable and dependable way to look after the people you love." Haven Life, https://www.havenlife.com (last visited Apr. 13, 2022).

21.     On or around March 23, 2022, the plaintiff used Haven Life's interactive calculator to estimate his life insurance rate for a $1,000,000 policy over a 30-year term. *See Estimate your life insurance policy rate*, Haven Life, https://havenlife.com/life-insurance-rates (last visited Apr. 13, 2022). At that time, for a male of the plaintiff's age living in Connecticut and who was in good health and does not use nicotine products, Haven Life calculated a monthly rate of approximately $72 and approximately $53 for a person in excellent health. *See id.*

22.     While the contents of the page and the estimated quote have changed since the plaintiff applied in March 2022, the rate was within the plaintiff's price range, and it compared favorably to other insurers which had quoted the plaintiff over $100 per month for a $1,000,000 policy over a 30-year term without a medical exam.

23.     The interactive calculator stated that "[i]n order to qualify for Haven Term coverage, you'll need to meet the following criteria: ● **Living in the US** ● Up to 64 years old · Not active military or in the process of enlisting ● Not intending to use the policy for business purposes ● Not intending to use the policy to replace another policy." *Id.* (emphasis added).

24.     The plaintiff reviewed the Frequently Asked Life Insurance Questions of the Haven Life website to gather more information before applying. *See Frequently Asked Life Insurance Questions*, Haven Life, https://support.havenlife.com/hc/en-us?_ga=2.45653222.379616716.1648738272-1608355728.1648071837 (last visited May 4, 2022).

25.     The plaintiff was reassured by Haven Life's description that it "is backed and wholly owned by Massachusetts Mutual Life Insurance Company (MassMutual) Springfield, MA 01111, a leading insurer with a long history of financial strength," and that MassMutual is "an A++ rated life insurer by A.M. Best*, an independent rater of insurance companies." *Id.*

26.     The plaintiff also reviewed the "Eligibility" section of Haven Life's Frequently Asked Life Insurance Questions page. Under "Who can qualify for a policy?" the site states:

> In order to be eligible for coverage, you'll need to meet the following criteria:
> **-U.S. resident**
> -Up to 64 years old
> -[N]ot active military or in the process of enlisting
> -Not intending to use the policy for business purposes (like securing a loan)
> -Not planning to use the policy to replace another policy.

*Id.* (emphasis added).

27. Below this question, under "Can non-US citizens apply?" the site states:

> Yes, Haven Term is available to **U.S. residents** and holders of certain visas. Please note that coverage for non-U.S. citizens is limited to $1,000,000 and requires a life insurance medical exam and a copy of supporting documents (i.e. **Green Card**, or visa that meets eligibility requirements) once the application is submitted.

*Id.* (emphasis added).

28.     As a noncitizen lawfully admitted to permanent residence who has lived in the United States for nearly three decades, the plaintiff believed that he was a "U.S. resident" who was "[l]iving in the US" and prepared an application for a $1,000,000 policy, the maximum amount permitted for non-U.S. citizens, for a term of 30 years.

29.     The plaintiff understood that he would need to submit supporting documents such as his green card and that he might be subject to additional requirements, such as undergoing a life insurance medical exam, even though Haven Life's website made clear that similarly-situated U.S. citizens could be approved for the same amount without such an exam. *See id.*

30.     On March 23, 2022, the plaintiff submitted to the defendants an application for individual term life insurance in the amount of $1,000,000 for a 30-year term via Haven Life's website at https://havenlife.com.

31.     The same day, Haven Life sent the plaintiff an email advising that the defendants had "received [his] signed application for a Haven Term Policy, issued by C.M. Life Insurance Company." E-mail from Haven Life <no-reply@havenlife.com> to Florencio A. Ghinaglia Socorro (Mar. 23, 2022, 5:43 p.m. EDT) (subject line: We Received Your Signed Application).

32.     On March 28, 2022, the plaintiff received an email entitled "Haven Life - Response Required" requesting that he enter his online account at https://havenlife.com to address a new confidential message. *See* E-mail from Natasha (Haven Support) <help@havenlife.com> to Florencio A. Ghinaglia Socorro (Mar. 28, 2022, 11:27 a.m.) (subject line: Haven Life – Response Required). The plaintiff was required to sign into his Haven Life account to view this message.

33.     The message advised that "[t]he underwriting team is requesting a copy of your **Visa/Green Card or permanent resident documents** to be provided before they can continue to review your application. Please reply to this message with a valid copy of the necessary documents. Once we receive, we will notify the underwriting team." Message from Natasha (Haven Life Customer Support) to Florencio A. Ghinaglia Socorro (Mar. 28, 2022, 11:27 a.m. EDT), https://support.havenlife.com/hc/en-us/requests/2057780 (last visited Apr. 13, 2022).

34.     The plaintiff replied that morning via his Haven Life account with images of the front and back of his green card. *See* Message from Florencio A. Ghinaglia Socorro to Natasha (Haven Life Customer Support) (Mar. 28, 2022), https://support.havenlife.com/hc/en-us/requests/2057780 (last visited Apr. 13, 2022).

35.     Later that day, the plaintiff received an additional message that advised that the application specialist had "forwarded it to the underwriting team" and that "[i]f we require further action on your end, we will let you know via email." Message from Natasha (Haven Life Customer Support) to Florencio A. Ghinaglia Socorro (Mar. 28, 2022, 4:06 p.m. EDT), https://support.havenlife.com/hc/en-us/requests/2057780 (last visited Apr. 13, 2022).

36.     On March 29, 2022, the plaintiff received an email from the defendants stating that they had reviewed the plaintiff's application for a Haven Term Policy, issued by C.M. Life Insurance Company, and that they had denied it "based on the health history of the proposed insured and/or the guidelines for this particular policy." E-mail from MassMutual <no-reply@massmutual.com> to Florencio A. Ghinaglia Socorro (Mar. 29, 2022, 1:28 p.m. EDT) (subject line: Your Life Insurance Application). *See also* Ex. 2.

37.     The email advised that the plaintiff had "the right to know the specific items of information that support the reasons given for this decision and the identity of the source of that information." *Id.*

38.     In order to obtain this information, the plaintiff was advised to "email help@havenlife.com, or write to us within 90 business days from the date of this letter at: MassMutual - Haven Term, Risk Management Department M325, Springfield, MA 01111." *Id.*

39.     The email advised that the defendants would "respond . . . within 21 business days of the receipt of your written request." *Id.*

40.     The email header contained a logo for defendant MassMutual, and the email was sent from an email address at massmutual.com. *See id.*

41.     The email noted that the policy for which the plaintiff was rejected is "issued by C.M. Life Insurance Company." *Id.*

42.     The email advised the plaintiff that he could contact defendant Haven Life electronically for more information about the rejection. *See id.*

43.     The plaintiff was confused that his application was rejected so early in the process and that the reasons given were his health history or else the guidelines for the policy.

44.     Nothing in the plaintiff's medical history or application suggested his application would be denied without further consideration, and the defendants had not asked the plaintiff for any additional health information, much less conducted the medical exam that the plaintiff had expected.

45.     Indeed, based on his health history and the other lawful requirements set forth by the defendants, the plaintiff was qualified for term life insurance with the defendants.

46.     After the defendants denied his application, other companies ultimately extended term life insurance contracts to the plaintiff notwithstanding his status, including one company which required the plaintiff to complete a medical exam before offering him a final quote.

47.     In addition, nothing in the policy guidelines, as far as they were publicly available, suggested a reason for denying the plaintiff's application.

48.     In light of the defendants' earlier request for his green card, the plaintiff worried that he was denied life insurance because of his status as a noncitizen.

49.     That same day, on March 29, 2022, the plaintiff emailed the defendants at help@havenlife.com, with the original message copied, to "request the 'specific items of information that support the reasons given' for the denial, including any aspects pertaining to the 'health history of the proposed insured and/or the guidelines of this particular policy.'" E-mail from Florencio A. Ghinaglia Socorro to Haven Life <help@havenlife.com> (Mar. 29, 2022, 1:39 p.m. EDT) (subject line: Re: Your Life Insurance Application). *See also* Ex. 2.

50.     Later that evening, the plaintiff sent a second email to the defendants at

help@havenlife.com as a reply to his initial email in order to "request a copy of [his] application

as signed." E-mail from Florencio A. Ghinaglia Socorro to Haven Life <help@havenlife.com>

(Mar. 29, 2022, 8:39 p.m. EDT) (subject line: Re: [Request Received] Re: Your Life Insurance

Application). *See also* Ex. 2.

51.     On March 31, 2022, the plaintiff received an email from the defendants requesting

that he enter his online account at havenlife.com to view a new confidential message. *See* E-mail

from Nila (Haven Support) <help@havenlife.com> to Florencio A. Ghinaglia Socorro (Mar. 31,

2022, 9:24 a.m.) (subject line: Re: Your Haven Life Application).

52.     The plaintiff signed in that morning and viewed a message from customer support

that included two attachments. *See* Message from Nila (Haven Life Customer Support) to

Florencio A. Ghinaglia Socorro (Mar. 31, 2022, 9:24 a.m. EDT),

https://support.havenlife.com/hc/en-us/requests/2060705 (last visited Apr. 13, 2022).

53.     The first attachment, with the filename "Florencio Ghinaglia Socorro-

decline.pdf," was a letter addressed to the plaintiff dated March 29, 2022. *See* Ex. 1, Letter from

MassMutual to Florencio A. Ghinaglia Socorro (Mar. 29, 2022).

54.     This letter contained a logo that stated "MassMutual" in its header. *Id.*

55.     The letter was signed by "Life Underwriting, Massachusetts Mutual Life

Insurance Company, 1295 State Street, Springfield, MA 01111." *Id.*

56.     The letter's footer contained the address for "Massachusetts Mutual Life

Insurance Company (MassMutual), 1295 State Street, Springfield, MA 01111-0001 and its

subsidiaries: C.M. Life Insurance Company and MML Bay State Life Insurance Company, 100

Bright Meadow Boulevard, Enfield, Connecticut 06082-1981." *Id.*

57.    The letter stated that the defendants "are unable to offer you coverage at this time due to being in the United States on a temporary visa and are a citizen of Venezuela." *Id.*

58.    The second attachment, with the filename "florencio applicatoin.pdf" [*sic*], was a copy of the plaintiff's application for individual term life insurance. *See* Application for Individual Term Life Insurance, C.M. Life Insurance Company, Florencio A. Ghinaglia Socorro (submitted Mar. 23, 2022).

59.    The document is entitled "Application for Individual Term Life Insurance" with "C.M. Life Insurance Company." *Id.*

60.    The document footer reads "ICC21 HAVEN TERM APP." *Id.*

61.    After reading the letter, the plaintiff recalled that he had experienced a similar issue in mid-2021 when he had applied to refinance student loans and lower his interest rate from approximately 8 percent to less than 4 percent once he was admitted as a permanent resident.

62.    One lender had requested that the plaintiff present his green card. Shortly thereafter, the lender rejected the plaintiff's application solely because he had a two-year green card.

63.    The plaintiff noticed that other lenders had similar policies, and the plaintiff was discouraged from refinancing his loans for several months.

64.    In November 2021, realizing that rising interest rates might make it worse to wait any longer, the plaintiff tried again and was able to refinance his loans with another lender.

65.    Nevertheless, the experience left the plaintiff upset that he was discriminated against because he was not a citizen or the right kind of noncitizen in others' eyes, despite his longstanding ties to this country, stable employment, good credit, and inability to change his status. The plaintiff was troubled that others in his position might face similar unfair outcomes.

66.     Recalling this incident, on March 31, 2022, the plaintiff replied to the defendants'
message and asked for additional clarification: "The letter mentions I was denied because I am
[i]n the United States on a temporary visa. Would I be eligible to apply once I have my ten-year
green card rather than my conditional, two-year permanent residence?" Message from Florencio
A. Ghinaglia Socorro to Nila (Haven Life Customer Support) (Mar. 31, 2022, 11:27 a.m. EDT),
https://support.havenlife.com/hc/en-us/requests/2060705 (last visited Apr. 13, 2022). *See* Ex. 2.

67.     The defendants responded to the plaintiff's request for clarification later that day:
"Yes that is correct, once you have the 10 year green card you can re-apply at that point."
Message from Nila (Haven Life Customer Support) to Florencio A. Ghinaglia Socorro (Mar. 31,
2022, 1:02 p.m. EDT), https://support.havenlife.com/hc/en-us/requests/2060705 (last visited Apr.
13, 2022). *See* Ex. 2.

68.     The defendants' response made clear to the plaintiff that his application was
rejected due to his particular status as a noncitizen, not due to his country of citizenship or
national origin, because the defendants stated that his country of citizenship or national origin
was irrelevant so long as he had the right kind of status.

69.     It was also clear to the plaintiff from these communications that his application
would not have been rejected if he were instead a citizen.

70.     The plaintiff was upset that he was denied because of his status, and he was
especially worried about what the defendants' rejection meant for him and for his loved ones
given the nature of the product that the plaintiff was seeking to purchase.

71.     The plaintiff was concerned that, if he died unexpectedly as his acquaintance had
and lacked term life insurance, he would leave his spouse saddled with debt and his elderly
parents without a source of support.

72.     The plaintiff was also concerned that other term life insurance companies might treat him the same way because they also had hidden policies that discriminated against noncitizens like the plaintiff, and that other companies might ultimately deny his application despite his insurability.

73.     In addition, the plaintiff was frustrated by the defendants' decision to treat his permanent residency as a temporary visa, which he believed was both improper and inaccurate.

74.     As someone who will apply to remove conditions on the status that he obtained by marriage, the plaintiff is aware that, as long as a couple applies by the deadline, conditions are removed unless the government determines that the marriage was fraudulent or that the noncitizen is deportable on such grounds as convictions for serious crimes.

75.     The defendants' policy ignores actual, individual risks involved in insuring noncitizens and whether their individual level of risk merits an outright denial of an application.

76.     Instead, the defendants accept only applications from U.S. citizens and arbitrarily favored classes of noncitizens.

77.     The defendants categorically prohibit other similarly situated noncitizens from qualifying for term life insurance based on their alienage.

78.     On or about April 26, 2022, the plaintiff sent MassMutual, C.M. Life, and Haven Life a letter by priority mail and through his Haven Life account setting forth in detail the reasons why their policies and/or practices as to noncitizen applicants are contrary to federal law as well as state law in Connecticut, Massachusetts, and New York. *See* Demand Letter re: Unlawful Alienage Discrimination, Florencio A. Ghinaglia Socorro (Apr. 26, 2022).

79.     In the letter, the plaintiff also offered to collaborate with the defendants to address the policies and/or practices that harmed the plaintiff without having to resort to litigation.

80.     The letter requested a response from the defendants indicating their willingness to reconsider their policies for noncitizens by May 4, 2022.

81.     On May 4, 2022, the defendants replied to the plaintiff through his Haven Life account and advised only that "[y]our request has been escalated to the appropriate team for review." Message from Qianqian (Haven Life Customer Support) to Florencio A. Ghinaglia Socorro (May 4, 2022, 12:23 p.m. EDT), https://support.havenlife.com/hc/en-us/requests/2060705 (last visited May 4, 2022).

82.     As of May 8, the defendants have not otherwise responded to the plaintiff's letter.

83.     The plaintiff still seeks to complete the application process and receive a final quote so that he can decide whether he would like to purchase insurance from the defendants.

84.     There is an actual and substantial controversy between the plaintiff and the defendants within the jurisdiction of this Court under 28 U.S.C. §§ 2201 and 2202.

## COUNT ONE
ALIENAGE DISCRMINATION
42 U.S.C. § 1981

85.     The plaintiff hereby repeats and alleges paragraphs 1 through 84 of this Complaint as if fully set forth herein.

86.     The plaintiff is a person within the jurisdiction of the United States.

87.     The plaintiff is not a citizen or national of the United States.

88.     The plaintiff has the right to make and enforce contracts in the United States and is entitled to the full and equal benefits of the law.

89.     Each defendant intentionally discriminated against the plaintiff on the basis of alienage by denying him the right to make and enforce a contract for life insurance while allowing similarly-situated U.S. citizens and different categories of noncitizens to do so.

90.     The plaintiff was otherwise qualified to apply for, receive, and contract for term life insurance with the defendants.

91.     Each defendant's intentional discrimination against the plaintiff prevented him from exercising, and thus interfered with, his right to make and enforce a contract for life insurance.

92.     Each defendant's facially discriminatory policy of refusing to contract with individuals such as the plaintiff for life insurance based on his alienage harmed the plaintiff and constitutes unlawful alienage discrimination in the making and enforcing of contracts in violation of 42 U.S.C. § 1981.

93.     Declaratory and injunctive relief are appropriate in clarifying and settling the legal relations at issue and affording relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.

94.     The plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and the injunctive and equitable relief sought in this action is the only means of securing complete and adequate relief. The plaintiff is now suffering and will continue to suffer irreparable injury from each defendant's discriminatory acts and omissions.

## **PRAYER FOR RELIEF**

WHEREFORE, the plaintiff respectfully requests that the Court enter judgment against the defendants as follows:

1.     Declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, that the policies and/or practices complained of are unlawful and violate Section 1981;

2.      A preliminary and a permanent injunction against the defendants and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in the unlawful policies, practices, customs, and usages set forth;

3.      All damages sustained as a result of the defendants' conduct, according to proof;

4.      Statutory damages to the extent allowable by law;

5.      Exemplary and punitive damages in an amount commensurate with the defendants' ability to pay and to deter future conduct;

6.      Costs incurred in this action, as well as reasonable attorney's fees if the plaintiff is represented by an attorney;

7.      Pre-judgment and post-judgment interest as provided by law; and

8.      Such other and further relief as the Court deems just and appropriate.


Respectfully submitted,


_____
Florencio A. Ghinaglia Socorro
64 Perkins St.
New Haven, CT 06513
Phone: (203) 589-1883
fghinaglia@gmail.com

## <u>DECLARATION UNDER PENALTY OF PERJURY</u>

The undersigned declares under penalty of perjury that he is the plaintiff in the above action, that he has read the above complaint, and that the information contained in the complaint is true and correct. 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed at ___Hartford, Connecticut___ on ___May 9, 2022___.

_____

Florencio A. Ghinaglia Socorro
64 Perkins St.
New Haven, CT 06513
Phone: (203) 589-1883
fghinaglia@gmail.com